**COTRACOM COMMODITY TRADING CO., et al., Plaintiffs,**

v.

**SEABOARD CORPORATION, et al., Defendants.**

No. Civ.A. 97–2391–GTV.

United States District Court,
D. Kansas,
Kansas City Division.

Nov. 19, 1999.

Stephen M. Sacks, John C. Massaro, Arnold & Porter, Washington, DC, Patrick J. Stueve, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Kansas City, MO, Roger D. Stanton, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Prairie Village, KS, for Cotracom Commodity Trading Ag, Bendel Feed and Flour Mill, Ltd.

J. Eugene Balloun, William R. Sampson, Paul W. Rebein, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Seaboard Corp., Seaboard Trading & Shipping, Ltd. and Sasco Engineering Co.

Mark A. Stites, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Kansas City, MO, for Industrie Bau Nord Ag, IBN Engineering Gmbh and IBN Agrotrading Ag.

### *MEMORANDUM AND ORDER*

RUSHFELT, United States Magistrate Judge.

The court has before it Plaintiffs' Motion for Sanctions and to Compel Compliance by Defendants with Court Order and with Discovery Obligations (doc. 110) and Defendants' Motion for Leave to File a Sur-reply in Opposition to Plaintiff's Motion for Sanctions and to Compel Compliance by Defendants with Court Order and with Discovery Obligations (doc. 127). Pursuant to Fed.R.Civ.P. 37, plaintiffs seek an order to compel defendant Seaboard Corporation to comply with this court's order of May 6, 1998, to certify compliance under oath, to comply with discovery rules, and to pay a sanction for its repeated non-compliance. They also seek an order to compel defendants to produce documents responsive to Requests 5, 8, 9, 17, 19,

24, 25, and 26 of their Second Request to Defendants for Production of Documents (Second Request) and to fully answer Interrogatories 5 and 6 of their First Set of Interrogatories to Defendants. In addition, with respect to Interrogatories 1, 2, and 3, they seek to compel defendants to certify under oath that they have undertaken a complete and full investigation and that their current responses are truthful, complete, and final. Defendants oppose the motion. They also seek leave to file a sur-reply. Plaintiffs oppose the motion of defendants.

## I. Post–Reply Briefing

■ The court first addresses the requests for a sur-reply and other post-reply briefing. Defendants have requested leave to file a sur-reply. In addition they filed a "supplemental" brief in opposition after plaintiffs filed their reply brief. Plaintiffs then filed a response to the supplement. The Rules of Practice of the United States District Court for the District of Kansas authorize briefs in support of a motion, in response to it, and in reply to the response. *See* D.Kan. Rule 7.1. The court, nevertheless, has discretion to permit additional briefs or memoranda. *See Mike v. Dymon, Inc.,* No. Civ.A. 95–2405–EEO, 1996 WL 427761, at *2 (D.Kan. July 25, 1996). "A party desiring to file one must obtain leave of the court." *Starlight Int'l, Inc. v. Herlihy,* 181 F.R.D. 494, 496 (D.Kan.1998). Generally the court grants leave only in "rare circumstances," such as when a party raises new arguments in its reply brief. *McShares, Inc. v. Barry,* 979 F.Supp. 1338, 1341 (D.Kan. 1997). The general rule against sur-replies and other post-reply briefing fairly and reasonably assists "the court in defining when briefed matters are finally submitted and in minimizing the battles over which side should have the last word." *Id.* The court generally grants leave to file a post-reply brief "only in extraordinary circumstances after showing of good cause." *Mike,* 1996 WL 427761, at *2 (quoting *Chevron USA, Inc. v. Kansas Gas Supply,* No. 87–1115–B, unpublished op. at 3 (D.Kan. Sept. 10, 1992)).

■ Defendants urge the court to grant leave for their sur-reply, because plaintiffs have purportedly raised two new arguments in their reply brief. They say that plaintiffs first argue in reply that documents were wrongfully withheld as privileged. They also contend that plaintiffs argue for the first time in reply that defendants acted inconsistently with answers to interrogatories by submitting a chart in settlement negotiations. Plaintiffs deny that either of these arguments arise first in reply. They contend that both they and defendants expressly addressed the two issues in briefing prior to their reply. The court agrees. Plaintiffs raised neither issue for the first time in reply. They merely expand upon already existing arguments. Defendants have shown no good cause to file the sur-reply. Accordingly, the court denies the motion for leave to file it. The court declines to consider it.

■ The court next addresses whether it should consider the "supplement" to the response of defendants and the response to that supplement. It generally disfavors supplements to existing briefing. Too often they constitute only veiled attempts to avoid the permissible briefing requirements of D.Kan. Rule 7.1(b). The court generally applies the principles for allowing a sur-reply or other post-reply brief to determine whether to consider a "supplement" to an already filed motion or brief. Occasionally supplements have brought important matters to the attention of the court.

■ In this instance the court will consider the "supplement" to defendants' brief in opposition and the response to that supplement. Defendants purport to supplement their brief to inform the court that the motion of plaintiffs is moot with respect to requiring them to produce documents of nonparty Seaboard Overseas, Ltd. Plaintiffs in turn deny that the motion is moot. If all or part of a motion becomes moot, parties should so inform the court. Conservation of judicial resources satisfies the element of good cause necessary to post-reply briefing.

## II. Motion for Sanctions

Plaintiffs seek sanctions. The court ordered defendants to produce documents responsive to Requests 1, 4, and 5 of Plaintiffs'

Request for the Production of Documents from Defendants (First Request) and to serve a supplemental response for each request there at issue, within twenty days. (Mem. & Order of May 6, 1998, at 7–8, doc. 38, hereinafter Order or Order of May 6, 1998.) In response to a motion to compel, defendants had contended that they had already produced "information" responsive to Request 1. The court found the response inadequate. It ordered defendants to produce all responsive documents within their possession, custody, or control. With respect to those allegedly produced previously, the court ordered defendants either to produce or to identify in writing each responsive document. (*Id.* at 5.) Defendants suggested in response to the motion that they had produced all documents in their possession, custody, or control responsive to Requests 2, 3, and 6. Consequently, the court directed them to "serve supplemental responses and state specifically that they have produced all the requested documents." (*Id.*) The court also overruled all objections asserted against the motion as to Requests 4 and 5 and ordered defendants to supplement their responses "to indicate they are either producing the documents or to reiterate, without objection, that none exist." (*Id.* at 6.)

On May 26, 1998, defendants filed a supplemental response. They asserted therein a general objection on grounds of work product and attorney-client privilege. They then responded to Requests 1, 2, 4, and 5 by stating they "will produce all responsive documents in their possession, custody, or control." In response to Request 3 they stated: "Defendants object to this request to the extent that it requests documents in the possession of entities that are not parties to this action. Subject to and without waiving the foregoing objections, Defendants have no responsive documents in their possession, custody, or control." In response to Request 6 they stated: "Defendants object to this request on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving the foregoing objections, Defendants will produce responsive documents in their possession, custody, or control." (*See* Defs.' Supplemental Resps. to Pls.' Req. for Produc. of Docs., attached as Ex. 3 to Pls.'

Mem.Supp.Mot. Sanctions, doc. 111, hereinafter Mem.Supp.)

On June 1, 1998, defendants filed a second supplemental response. They again stated a general objection on grounds of work product and attorney-client privilege. They altered their responses to Requests 1, 2, 4, and 5 to state that they "have produced all documents in their possession, custody, or control." They removed the specific objection to Request 6 and changed their response to state that they "have produced responsive documents in their possession, custody, or control." They made no change to their response to Request 3. (*See* Defs.' Second Supplemental Resps. to Pls.' Req. for Produc. of Docs., attached as Ex. 4 to Mem. Supp.) On June 4, 1998, defendants further supplemented their response to Request 6 to state that they "have produced all responsive documents in their possession, custody, or control." (*See* Letter from Rebein to Gentlemen of 6/4/98, attached as Ex. 5 to Mem. Supp.)

Defendants claim they have complied with the Order of May 6, 1998. They explain the failure to initially and expressly state that "all responsive documents had been produced" as an oversight of counsel. They provide an affidavit of counsel to support the explanation. (*See* Aff. of Paul W. Rebein, attached as Ex. A to Defs.' Resp. to Pls.' Mot., doc. 120.) The court accepts the explanation. The excused failure, however, constitutes but a small part of the alleged failure to comply with the order of the court.

█ Plaintiffs also allege that defendants have withheld documents from production, despite statements to the court that they have produced all responsive items. In response to the motion defendants explain that they asserted the following objection to the initial requests: "Defendants object to Requests 1–6 on the grounds that they request 'any documents' in Defendants' possession or control. As a result, these requests seek information and documents that are protected from disclosure under the attorney-client privilege and the attorney 'work product' doctrine." They contend that plaintiffs had not previously questioned the assertion of

privilege or work-product. They claim the previous motion to compel did not raise the issue and that the court did not address it in its Order. Citing *Medina v. City of Osawatomie,* 992 F.Supp. 1269, 1273 (D.Kan.1998), they argue that plaintiffs have waived the right to contest the validity of the objections by not previously raising the issue.

*Medina* does not help defendants. That decision noted the reluctance of the court to consider issues raised for the first time in a reply brief. 992 F.Supp. at 1273. The present situation differs significantly. Defendants want the court to sustain an objection they have asserted against the present motion for sanctions, but not against the underlying motion to compel. They suggest that the failure of plaintiffs to previously contest the validity of the objections precludes them from now doing so. *Medina* does not stand for that proposition.

Plaintiffs moved to compel production to six requests propounded upon defendants. In response to Request 1 defendants stated that they had previously produced "this information" to plaintiffs. In response to the motion they relied upon no objection of privilege. They merely reiterated that they had provided the information. The court found the response inadequate. It specifically noted that defendants did not object to the production. It thus directed them to produce "whatever responsive documents are within their possession, custody, or control." (Order at 5.) With respect to Requests 2, 3, and 6, defendants stated in response to the motion that they had produced all documents in their possession, custody, or control. The court directed them to serve supplemental responses to that effect. As to Requests 4 and 5, defendants stated that no responsive documents existed. In response to the motion they relied upon objections which the court overruled. The court thus directed that defendants "serve supplemental responses to indicate they are either producing the documents or to reiterate, without objection, that none exist." (*Id.* at 6.) Nowhere in the response to the motion of plaintiffs did defendants assert or rely upon any objection of privilege or work product protection. (*See* Defs.' Resp. Pls.' Mot. Compel, doc. 34.)

That plaintiffs never raised the issue of privilege to the court has no materiality. The duty rested with defendants, not plaintiffs. If defendants intended to rely upon objections of privilege or work product, they had the burden to assert them in opposing the motion to compel. Their failure precludes them from now relying upon the objections. They abandoned them.

Fed.R.Civ.P. 26(b)(5), furthermore, provides that a party asserting a claim of privilege both assert it timely and provide a description of the withheld information:

> **(5) Claims of Privilege or Protection of Trial Preparation Materials.** When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and *shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.*

Rule 26(b)(5) (emphasis added). Defendants have made no showing that they provided a privilege log when they withheld the information from discovery. They have made no showing that they submitted such a log to the court in response to the underlying motion to compel. The response to the motion to compel contains no privilege log or anything else to suggest reliance upon privilege or work product against the discovery there at issue. (*See* Defs.' Resp. Pls.' Mot. Compel.) Accordingly, the court deemed such objections abandoned. It also could have deemed them waived for failure to comply with Rule 26(b)(5). *See* Fed.R.Civ.P. 26(b)(5) advisory committee notes (1993 Amend.); *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 200 (D.Kan.1996).

Defendants attach a privilege log in response to the present motion for sanctions. (Privilege Log attached as Ex. C to Defs' Resp. Pls.' Mot.) Nothing indicates when they provided it to plaintiffs. All reasonable inferences indicate that they provided it sometime after the court's ruling on the un-

derlying motion to compel—most likely not until responding to the motion for sanctions. They had the duty to timely provide the information required by Rule 26(b)(5). Nothing before the court indicates they did so. The court may deem objections of privilege and work product waived for such failure.

■ Defendants have engaged in sanctionable conduct. They have failed to comply with the order of the court. First, they asserted objections in their supplemental responses. In both their First and Second Supplemental Responses they asserted a general objection based upon attorney-client privilege and work product against all requests. They also initially asserted specific objections against Requests 3 and 6. They eventually withdrew the objection against Request 6 by their Second Supplemental Response. The assertion of objections in their supplemental responses is contrary to the order of the court. Nothing in the Order permits assertion of objections as part of a valid supplemental response. When the court orders supplemental responses to discovery, assertion of objections does not constitute a valid supplemental response.

■ When ruling upon a motion to compel, the court generally considers those objections which have been timely asserted and relied upon in response to the motion. It generally deems objections initially raised but not relied upon in response to the motion as abandoned. It deems objections not initially raised as waived.

■ In this instance the court considered and ruled upon all objections upon which defendants relied. It overruled them. Overruling an objection eliminates its availability for a later response. The waiver or abandonment of objections also precludes their later assertion in a supplemental response. Were the court to sustain an objection and yet order a supplemental response, such response would be subject to the sustained objection. That did not happen here. Defendants should have supplemented their responses without objection. By including objections in their supplemental responses, they violated the implicit order of the court.

■ Defendants also failed to comply with express provisions of the Order of May 6, 1998. In response to the motion for sanctions they admit that they withheld privileged documents from plaintiffs, after the court ordered their production. Such withholding violates the dictates of the Order of May 6, 1998. It provides no basis to exclude privileged documents from the compelled production. Defendants had unambiguously stated to the court that they had produced *all* responsive documents to Requests 1, 2, 3, and 6 that were in their possession, custody, or control. (*See* Defs.' Resp.Pls.' Mot. Compel, doc. 34.) They did not limit their statement to non-privileged documents. They cannot now unilaterally limit the production. With respect to Requests 4 and 5, defendants did not rely upon any objection of privilege or work product in response to the motion which led to the Order of May 6, 1998. Consequently, with respect to all six requests for production defendants abandoned the protections afforded by those objections.

Notwithstanding such abandonment, plaintiffs indicate that they have no interest in obtaining legitimately privileged documents. They contest asserted privileges, nevertheless, against documents bearing Bates numbers 460 to 473, 477, 478, 486 to 505, 520, 521, 951, 952, 954 to 958, 988, 993 to 999, 1004, and 1008. They want defendants to produce those documents. Defendants shall produce them.

■ Defendants also failed to comply with the Order of May 6, 1998, in connection with Request 2. They admit in response to the motion for sanctions that, although they "produced the majority of [responsive] documents," they did not produce certain contracts and shipping documents, until depositions revealed their omission from the court-compelled production. They suggest no prejudice to plaintiffs from the delayed production. They otherwise proffer no reason for the failure to produce the documents within the deadline established in the Order. The lack of prejudice affects the sanction to be imposed. It does not excuse defendants for non-compliance with the Order.

Defendants further failed to comply with the Order as to Request 3. That Request asks them to produce "[a]ny documents reflecting purchases, hedging transactions and/or future contracts with respect to wheat which was to be delivered ... to Seaboard's mill in Nigeria." They explain that they "do not own a mill in Nigeria." They, nevertheless, admit that their subsidiary, Seaboard Overseas, Ltd. (SOL), owns fifty per cent of a Nigerian mill. They thereafter assert that they "have produced all non-privileged documents responsive to this Request and do not have documents relating to such purchases, etc., in their possession, custody or control." As already discussed, the withholding of privileged documents from the court-ordered production violates the order of the court.

Defendants also violate the Order of the court to the extent they have withheld documents, as non-responsive, *solely* because they do not own a mill in Nigeria. In preliminary paragraphs preceding the six requests for production plaintiffs defined "Seaboard" as any named defendant, "as well as any other ... subsidiaries ... of these entities." (*See* Req.Produc.Docs., Definitions & Instructions ¶ A, attached as Ex. A to Mem.Supp.) That defendants themselves own no Nigerian mill does not dispose of their duty to produce documents. The Order of May 6, 1998, in effect compelled them to produce all documents in their possession, custody, or control "reflecting purchases, hedging transactions and/or future contracts with respect to wheat which was to be delivered ... to [their or their subsidiary's] mill in Nigeria."

■ Defendants also appear to have violated the Order of May 6, 1998, by not producing documents of their subsidiary SOL. Whether such violation occurred hinges upon the control defendants have over that entity. Citing *Uniden America Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 305 (M.D.N.C.1998), plaintiffs assert that "[i]t is well established that a parent must produce all the documents of its wholly-owned subsidiary." The court agrees with this principle. In *Starlight International Inc. v. Herlihy*, 186 F.R.D. 626 (D.Kan.1999) the court considered an individual owner and his three "solely-owned entities" as "one person" for pur-

poses of discovery. 186 F.R.D. at 635. For the same reasons the court would consider documents within the possession, custody, or control of a wholly-owned subsidiary to be within the control of the parent corporation.

■ The assertion of plaintiffs, however, begs the question—Is SOL a wholly-owned subsidiary of defendants? Without substantiation plaintiffs assert that it is. They have the burden to show the requisite control by defendants. *See Sithon Maritime Co. v. Holiday Mansion*, No. Civ.A. 96–2262–EEO, 1998 WL 182785, at *6 (D.Kan. Apr. 10, 1998) ("The party seeking production of the documents ... bears the burden of proving that the opposing party has such control.") An unsubstantiated assertion generally does not suffice to carry that burden. It may suffice, however, if the opposing party does not contest the factual assertion, when given the opportunity to do so. In this instance plaintiffs make the assertion in their reply brief. That usually precludes any opportunity to contest the assertion. Defendants have twice filed papers, however, relating to the present motion, after plaintiffs filed their reply brief. They first sought leave to file a sur-reply. Second, they supplemented their response in opposition. Neither time did they contest the assertion that SOL is their wholly-owned subsidiary. Their supplement, furthermore, demonstrates sufficient control by defendants over SOL to compel production of responsive documents of SOL. Accordingly, the court finds that plaintiffs have carried their burden to show defendants have sufficient control over SOL to produce documents in its possession, custody, or control.

As sanctions for the conduct of defendants, plaintiffs ask the court to order defendants to comply with the Order of May 6, 1998, to certify their compliance, and to monetarily compensate them for costs and expenses, including attorneys fees, incurred in deposing witnesses of Seaboard and preparing the motion for sanctions. The requested sanctions appear reasonable, except for awarding costs and expenses incurred in deposing witnesses. Defendants shall forthwith comply with the Order of May 6, 1998, as modified with respect to the production of privileged documents herein. They shall file supplemental

responses to the requested discovery to show that they have fully complied with that Order.

The court also awards costs and expenses in the amount of $500 to plaintiffs and against defense counsel. The court finds no substantial justification for the non-compliance with the Order of May 6, 1998, as set forth herein. It also finds no circumstances which make an award of expenses unjust. The purpose of sanctions is not merely to reimburse the wronged party or penalize the offending party, but to deter others from engaging in similar conduct. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). An award of $500 appears sufficient. The court imposes the sanction upon counsel because they should have understood the duties in responding to the Order. Nothing of record indicates defendants should bear responsibility for the noncompliance. The award herein provided for shall be paid to plaintiffs and a receipt or certificate of payment filed with this court within fifteen (15) days of the date of this order.

Although the court declines to award costs and expenses on depositions already taken, it grants plaintiffs leave to re-depose any individual for the limited purpose of inquiring about withheld documents. Defendants shall bear the additional costs of re-deposing such individuals. Such additional costs would include paying a court reporter, any fees to the witness, and travel expenses. They would not include attorney time. The attorneys would presumably take the same amount of time to make the necessary preparation and inquiries whether they asked the questions at a first or subsequent deposition.

In addition to the sanctions imposed herein, the court takes this opportunity to specifically warn defendants and their counsel that further noncompliance with orders of the court or discovery obligations may result in harsher sanctions, including default judgment for plaintiffs or a monetary sanction payable to the court.

## III. Motion to Compel

The court next addresses that portion of the motion of plaintiffs which seeks an order to compel defendants to provide discovery. It appears that plaintiffs seek further production to Requests 5, 8, 9, 17, 19, 24, 25, and 26. Defendants asserted three general objections: (1) attorney-client privilege and work-product doctrine; (2) overly broad and unduly burdensome; and (3) irrelevancy. They reiterated the latter two objections against the specific requests here at issue. In response to the motion they only rely upon the latter two objections to avoid the requested discovery. Consequently, the court deems objections of attorney-client privilege and work product abandoned.

Defendants object that the requests are facially overly broad and unduly burdensome in that they seek information from them and their affiliates, parents, subsidiaries, successors, and predecessors. That plaintiffs do not limit the requests to defendants themselves does not necessarily make the requests overly broad or unduly burdensome on their face. The inclusion of successors and predecessors, however, does make the requests unduly burdensome on their face as to those entities. Defendants need not produce documents from successors or predecessors. They otherwise have the obligation to support the objections that the requests are overly broad and unduly burdensome. The court will address such objections in the context of the particular requests for production.

Plaintiffs allege breaches of contracts and fiduciary duty against defendants. (Compl. for Monetary Damages, doc. 1.) The dispute involves alleged advice given plaintiffs by defendants regarding advance purchasing of wheat in anticipation of increasing prices. (*Id.* ¶¶ 24–27.)

Request 5 seeks "[a]ll tax records for Seaboard and for any affiliates, parents, subsidiaries, successors, and predecessors of Seaboard for the years 1990 through the present time." Plaintiffs suggest the request is relevant to compare the relative level of sophistication between the parties. They contend that such comparison is necessary to resolve

their claim for breach of fiduciary duty. Defendants do not contest the need for such comparison. They instead claim the request does not support the rationale.

Tax records of defendants themselves appear relevant for purposes of comparison. Public policy, nevertheless, protects against their unbridled production. *Hilt v. SFC Inc.,* 170 F.R.D. 182, 189 (D.Kan.1997).

> The courts have developed a two-pronged test to assure a balance between the liberal scope of discovery and the policy favoring the confidentiality of tax returns. "First, the court must find that the returns are relevant to the subject matter of the action. Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." "The party seeking production has the burden of showing relevancy, and once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable."

*Id.* (citation omitted).

■ Plaintiffs have shown the relevancy of the tax returns of defendants. Defendants thus have the burden to show that other sources exist from which plaintiffs may readily obtain the information. They have not carried that burden. The court could perhaps speculate as to other available sources. It declines to do so. The party resisting discovery must affirmatively show that other sources indeed exist from which the requesting party can glean the desired information. Having failed to make such a showing, defendants shall produce their tax returns. They need not produce returns for their affiliates, parents, subsidiaries, successors, and predecessors. Plaintiffs have failed to show the relevance of such returns.

■ Request 8 seeks "[a]ll minutes of the Board of Directors and/or Managing Directors of Seaboard and for any affiliates, subsidiaries, successors, and predecessors of Seaboard, for the years 1990 through the present time." Request 9 seeks "[a]ll minutes of meetings of shareholders, partners or owners" of those entities for that same time period. Plaintiffs suggest these requests are relevant to determine what purchases defendants were making for their own mills and their own account during the time it was advising plaintiffs about what purchases they should make. The discovery appears relevant for that purpose. Defendants claim they have reviewed the requested minutes and "found no information regarding Defendants' transactions with Plaintiffs." (Aff. of Steve J. Bresky, attached as Ex. E to Defs.' Resp., doc. 120.) The averment of Mr. Bresky does not show the requests to be irrelevant. Plaintiffs do not seek the minutes solely for information about their transactions with defendants. They also want to find out whether defendants were following their own advice with respect to wheat purchases. The court overrules the objections of irrelevance. Except as previously discussed with respect to successors and predecessors, it also overrules objections that the requests are overly broad and subject defendants to undue burden. Defendants have not adequately supported them. They shall produce all documents responsive to Requests 8 and 9, except those of their successors and predecessors.

■ Request 17 seeks "[a]ll documents relating to Seaboard's participation in any purchase of wheat in any country including, but not limited to, the United States and Argentina." Request 19 seeks "[a]ll documents reflecting the purchase, delivery or other dealings with wheat or other commodities by Seaboard that were delivered to any country in Africa including, but not limited to, Nigeria and Ghana, from 1987 through the present time." The court finds these requests overly broad and unduly burdensome on their face. It finds Request 17 facially overly broad, due to its use of the omnibus phrase "relating to." The phrase does not modify a specific type of document, but rather all documents. Its use thus makes the request overly broad. That defendants may provide insufficient support for the objection does not matter. "A party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support." *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 197 (D.Kan.1996).

■ The court finds Request 19 overly broad on its face, not because of one specific phrase, but because of its overall wording. The term "reflecting" does not necessarily make a request overly broad on its face. Its use in conjunction with other non-specific language in Request 19, however, makes the request overly broad. Fed.R.Civ.P. 34 requires that requests for production identify sought documents with reasonable precision. Request 19 fails to meet the particularity requirements of Rule 34. The respondent is left to guess what documents are responsive. Request 19 is not specific enough to readily identify what is wanted.

■ Despite the overly broad nature of Requests 17 and 19, defendants have the duty to respond to the extent they are not objectionable. *See* Fed.R.Civ.P. 34(b). The court, nevertheless, requires no further response when inadequate guidance exists to determine the proper scope of a request for discovery. *Schartz v. Unified School Dist. No. 512,* No. Civ.A. 95–2491–EEO, 1996 WL 741384, at *1 (D.Kan. Dec. 18, 1996) (addressing duty to answer interrogatories and respond to requests for production); *see also, Mackey v. IBP, Inc.,* 167 F.R.D. 186, 198 (D.Kan.1996) (addressing duty to answer interrogatory). No guidance exists with respect to Request 17. The court will, therefore, compel no further response to it. Request 19, however, appears non-objectionable to the extent it seeks documents reflecting the purchase or delivery of wheat to African countries by defendants or SOL its wholly-owned subsidiary that owns a mill in Nigeria. The request appears relevant to whether defendants followed their own advice. It appears relevant to determine the relative sophistication of defendants. Defendants provide insufficient evidence of undue burden or overbroadness. They shall produce all responsive documents reflecting the purchase or delivery of wheat to African countries by them or SOL, except for documents of their successors and predecessors.

■ Request 24 seeks "[a]ll documents reflecting job descriptions of employees of Seaboard or affiliates of the same from 1990 through the present time." Request 25 seeks "[a]ll resumes or other documents reflecting the qualifications of employees of Seaboard or affiliates of the same from 1990 through the present time." Plaintiffs suggest these requests are relevant to compare the sophistication of the parties. The court sees minimal connection between job descriptions and sophistication. Although it sees more connection between resumes and sophistication, the burden of producing the documents outweighs their minimal relevance. Defendants have adequately demonstrated undue burden with respect to producing responsive documents. It need not further respond to Requests 24 and 25.

Request 26 seeks "[a]ll account records of Seaboard or affiliates of the same time from any bank or other financial institution from 1990 through the present time." Plaintiffs suggest these records are relevant to combat the attempt by defendants to "pierce" plaintiffs' alleged "corporate veil." Plaintiffs contend that activities of defendants will show that plaintiffs' own actions are consistent with industry practice and custom, not as grounds "for veil-piercing."

■ State law provides the rule of law for piercing the corporate veil in this diversity action. *Yoder v. Honeywell Inc.,* 104 F.3d 1215, 1219 (10th Cir.1997). The choice of law is determined by the conflict of laws rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The parties have not addressed the choice-of-law issue in the briefs before the court. "Where the parties fail to raise the issue of choice of law, the Court need not raise the issue *sua sponte,* and the parties are deemed to have acquiesced in the application of the law of the forum." *Keles v. Yale Univ.,* 889 F.Supp. 729, 733 (S.D.N.Y.1995), *aff'd,* 101 F.3d 108, 1996 WL 115329 (2d Cir.1996); *see also, GBJ Corp. v. Eastern Ohio Paving Co.,* 139 F.3d 1080, 1085 (6th Cir.1998) (stating that the court "need not address choice of law questions *sua sponte*"). The court is not obliged to investigate whether a conflict of law issue exists, when the parties present no conflict between the laws of potentially interested states. In Kansas, furthermore, "[t]he general rule is that the law of the forum applies unless it is expressly shown that a different

law governs, and in case of doubt, the law of the forum is preferred." *Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 221, 679 P.2d 1159, 1181 (1984), *rev'd in part on other grounds*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Grimmett v. Burke*, 21 Kan.App.2d 638, 652, 906 P.2d 156, 166 (1995); *Gray v. Amoco Prod. Co.*, 1 Kan. App.2d 338, 341, 564 P.2d 579, 583 (1977), *rev'd in part on other grounds*, 223 Kan. 441, 573 P.2d 1080 (1978); *see also, Koch v. Koch Indus., Inc.*, 2 F.Supp.2d 1416, 1420 n. 3 (D.Kan.1998) (quoting *Gray v. Amoco Production Co.*, 1 Kan.App.2d 338, 564 P.2d 579). Accordingly, the court applies the law of Kansas.

"Kansas has substantial case law authorizing the piercing of a corporate veil if to do otherwise would work an injustice on third parties." *Pemco, Inc. v. Kansas Dep't of Revenue*, 258 Kan. 717, 723, 907 P.2d 863, 867 (1995). Kansas courts have set out ten

> factors as guidelines in making a determination of alter ego status. The 10 factors are whether: (1) the parent corporation owns all or a majority of the capital stock of the subsidiary; (2) the corporations have common directors or officers; (3) the parent corporation finances the subsidiary; (4) the parent corporation subscribed to all of the capital stock of the subsidiary or otherwise caused its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

> ... The ultimate test for imposing alter ego status is whether, from all of the facts

and circumstances, it is apparent that the relationship between the parent and subsidiary is so intimate, the parent's control over the subsidiary is so dominating, and the business and assets of the two are so mingled that recognition of the subsidiary as a distinct entity would result in an injustice to third parties. In addition to the factors used to determine a corporate alter ego status, a plaintiff must show that allowing the legal fiction of a separate corporate structure would result in injustice toward the plaintiff.

*Doughty v. CSX Transp., Inc.*, 258 Kan. 493, 499–500, 905 P.2d 106, 110–11 (1995). Despite these factors, "[e]ach case involving disregard of the corporate entity must rest upon its special facts." *Sampson v. Hunt*, 233 Kan. 572, 579, 665 P.2d 743, 751 (1983). Although significant, these factors "are neither exclusive nor mandatory." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, Nos. Civ.A. 91–2133–GTV and 95–2267–GTV, 1997 WL 756602, at *6 (D.Kan. Dec. 1, 1997) (applying Kansas law). The Supreme Court of the United States has stated, furthermore, that "the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *United States v. Bestfoods*, 524 U.S. 51, 62, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998).

In light of the preceding governing law, the court finds no relevance in Request 26 to contest the piercing of the corporate form of plaintiffs. Plaintiffs may not attack an attempt to pierce their corporate veil by showing that others in the industry behave the same way. Defendants have averred, furthermore, that it would take several months to gather the 500,000 to 1,000,000 pages of responsive documents. Were the court to find the request relevant, its relevance would be outweighed by the undue burden necessary to produce responsive documents. Defendants need not further respond to Request 26.

The court next addresses the interrogatories at issue. Plaintiffs contend defendants have not adequately answered Interrogatories 1, 2, 3, 5, and 6 of their First Set of

Interrogatories. With respect to the first three interrogatories, plaintiffs simply want defendants to certify under oath that they have undertaken a complete and full investigation and that their current response is truthful, complete, and final. Defendants admit that they have thrice supplemented their responses. They submit that they will continue to do so, as required by Fed.R.Civ.P. 26(e), if they later discover additional information. The court declines to order further response to Interrogatories 1, 2, or 3. Defendants have verified the initial responses in accordance with Fed.R.Civ.P. 33(b)(1). No one suggests defendants failed to properly verify the supplements. In the absence of such suggestion, the court assumes proper verification. The verification of the responses should alleviate the concerns of plaintiffs. *See* Fed.R.Civ.P. 26(g)(2).

Interrogatory 5 seeks information about the sophistication of defendants. Defendants object that the interrogatory is overly broad and subjects it to undue burden. The court overrules the objections. Contrary to the belief of defendants, the interrogatory does not seek information about all of their employees. It seeks information about any "person who dealt with Plaintiff or the Forward Contracts." Defendants shall fully answer the interrogatory.

Interrogatory 6 asks defendants whether they were plaintiffs' "agent, advisor, lender, partner; joint venturer, co-investor." Defendants object that the interrogatory is vague and ambiguous, because it does not define "the terms agent, advisor, lender, and joint venturer." They further object that it calls for a legal conclusion. The court overrules the objections. It does not find the terms vague or ambiguous. The interrogatory, furthermore, appears to require no more than the application of law to the facts of the case. It does not extend to a matter of law unrelated to the facts of the case. The court, therefore, overrules the objection that the interrogatory improperly seeks legal conclusions. Defendants shall fully answer Interrogatory 6.

## IV. Conclusion

For the foregoing reasons, the court sustains in part and overrules in part Plaintiffs' Motion for Sanctions and to Compel Compliance by Defendants with Court Order and with Discovery Obligations (doc. 110) and overrules Defendants' Motion for Leave to File a Sur-reply in Opposition to Plaintiff's Motion for Sanctions and to Compel Compliance by Defendants with Court Order and with Discovery Obligations (doc. 127). The court enters sanctions against defendants and their counsel as set forth herein, including ordering compliance with the Order of May 6, 1998. In addition, within twenty days of the date of this order, defendants shall produce documents responsive to Requests 5, 8, 9, and 19 of Plaintiffs' Second Request to Defendants for Production of Documents and fully answer Interrogatories 5 and 6 of Plaintiffs' First Set of Interrogatories to Defendants, as set forth herein. Such production shall take place at the office of counsel for plaintiffs located at 4121 West 83rd Street, Suite 227, Prairie Village, Kansas or any other location agreed upon by the parties. The court otherwise overrules the motions.

IT IS SO ORDERED.