**DIRECTV, INC., Plaintiff,**

v.

**Robert PUCCINELLI, et al., Defendants.**

**No. CIV.A.03–2287–GTV–DJW.**

United States District Court,
D. Kansas.

Nov. 23, 2004.

Robert P. Numrich, Todd M. Johnson, Baty, Holm & Numrich, P.C., Kansas, MO, for plaintiff.

Robert S. Caldwell, Caldwell & Moll, L.C., Robert R. Laing, Jr., Law Office of Robert R. Laing, Jr., J. Steven Schweiker, Overland Park, KS, David S. Rauzi, Law Office of David S. Rauzi, Kansas City, MO, Mark D. Hinderks, Donald C. Ramsay, Stinson, Morrison, Hecker LLP, Overland Park, KS, for defendants.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Pending before the Court are Motions to Compel filed by Defendant Bill Strauss and William Turner ("Defendants") (doc. 158 and 159). Also before the Court are Defendants' requests for Rule 26(g), 37(a)(4), and 37(b)(2) sanctions.

## I. Background Information

According to the Pretrial Order entered in this case, this lawsuit "involves the surreptitious possession and use of illegal devices and equipment designed to intercept and decrypt [Plaintiff] DIRECTV's protected satellite communications, ultimately allowing for the free viewing of television programming."[1] Plaintiff alleges that Defendants Bill Strauss ("Strauss") and William Turner ("Turner") violated 47 U.S.C. § 605(a) by intercepting, receiving and exhibiting, or otherwise assisting in the unauthorized interception of Plaintiff's encrypted satellite transmission of television programming,[2] and 47 U.S.C. § 605(e)(4) by manufacturing, assembling, modifying or selling equipment used primarily in the assistance of the unauthorized decryption of Plaintiff's encrypted satellite programming.[3] Plaintiff also alleges that Defendants violated 18 U.S.C. § 2511 by intentionally intercepting, endeavoring to in-

---

1. Pretrial Order (doc. 251), ¶ 2.

2. *Id.* at ¶¶ 6.a, 7.a (1).

3. *Id.* at ¶¶ 6.a, 7.d (1).

tercept or procuring others to intercept Plaintiff's encrypted satellite transmission of television programming.[4] In addition, Plaintiff alleges that Defendants converted Plaintiff's encrypted satellite transmission of television programming in violation of Kansas common law.[5]

More specifically, Plaintiff claims that each Defendant purchased from Vector Technologies a device that can be used to access Plaintiff's satellite programming without authorization ("Satellite Piracy Device"). Plaintiff has "packing slips" which allegedly show that a Satellite Piracy Device was shipped to Strauss in November 2000 and to Turner in April 2001.

Defendants deny engaging in any of the alleged illegal activities and deny purchasing, receiving, paying for, or using any Satellite Pirate Devices or other similar devices. Furthermore, Defendants dispute the accuracy of the packing slips.

## II. Defendants' Motions to Compel

### A. Introduction and Duty to Confer

Strauss and Turner served identical interrogatories and requests for production on Plaintiff. The interrogatories and document requests at issue concern evidence of Defendants' alleged purchases of the Satellite Piracy Devices, the records custodians Plaintiff intends to use at trial to authenticate the packing slips, testing of the alleged Satellite Piracy Devices, evidence of Defendants' alleged visits to satellite piracy websites, and prior communications between Plaintiff and Defendants. Although Strauss and Turner have filed separate motions to compel, the motions are identical.

Plaintiff argues as a threshold matter that the motions should be denied because Defendants have not satisfied the duty to confer imposed by Federal Rule of Civil Procedure 37 and D. Kan. Rule 37.2. The Court has reviewed the information provided by Defendants in their motions and in their reply briefs, and finds that the duty to confer has

been met. The Court will therefore proceed to rule on the merits of Defendants' motions.

### B. The Alleged Satellite Piracy Devices

#### 1. Interrogatory No. 1—Identity of the Satellite Piracy Devices

This interrogatory asks Plaintiff to identify each Satellite Piracy Device that Plaintiff claims Defendants possessed. Plaintiff responded to the interrogatory by stating: "Plaintiff refers defendant to its Complaint and Fed.R.Civ.P. 26(a)(1) disclosures."

■ Defendants assert that Plaintiff is not allowed to refer Defendants to previously produced or identified documents in lieu of providing a written answer. The Court agrees.

In *Zapata v. IBP, Inc.*,[6] the Court disapproved of a party's similar practice. The Court stated:

In some instances defendant answers the interrogatories simply by referring plaintiffs to documents. The court generally finds such practice unacceptable. An answering party may affirmatively elect to produce its business records in accordance with Fed.R.Civ.P. 33(d) as its response. It may also refer to documents attached to its answers to the interrogatories. In this instance defendant has not exercised an option under Fed.R.Civ.P. 33(d). Nor has it referred to documents attached to its answers. Absent compliance with Rule 33(d) or attachment of appropriate documents, defendant may not direct plaintiffs to find answers from previously produced documents or identified witness lists.[7]

Plaintiff has not exercised its option under Rule 33(d) to provide Defendants with business records from which this information may be obtained. Nor does it appear that Plaintiff has attached any documents to its interrogatory answer that are identified as being responsive to this particular interrogatory. Plaintiff may not merely refer Defendants to other pleadings or its disclosures

---

**4.** *Id.* at ¶¶ 6.a, 7.b (1).

**5.** *Id.* at ¶¶ 6.a., 7.e (1).

**6.** No. Civ. A. 93–2366–EEO, 1997 WL 50474 (D.Kan. Feb.4, 1997).

**7.** *Id.* at *1.

hoping that Defendants will be able to glean the requested information from them.

In light of the above, the Court will grant the Motions to Compel as to this interrogatory. Within *ten (10) days* of the date of filing of this Order, Plaintiff shall provide an amended written response to this interrogatory.

### 2. Request for Production Nos. 1, 4–7

Request No. 1 asks Plaintiff to produce all documents which support its contention that Defendants purchased Satellite Piracy Devices. Request Nos. 4, 5, and 6 ask Plaintiff to produce documents that show the dates on which Defendants allegedly possessed or had access to a DIRECTV compatible satellite dish, DIRECTV compatible satellite receiver, and DIRECTV compatible smart card, respectively.

Plaintiff objected to all four of these requests on the grounds that the requests "invade the work-product, investigative and consulting expert privileges by seeking information or documents which have been developed by DIRECTV or its counsel or their agents in anticipation of litigation and is an intrusion upon the trial strategy and the thought processes of DIRECTV's counsel." Plaintiff also objected on the basis of attorney-client privilege. In addition, Plaintiff objected to each request on the basis that:

> [Each] request necessarily seeks to obtain information contained in confidential communications relating to the claims make [sic] for the basis of this lawsuit which may have been made between or among DIRECTV and its agents, representatives, and employees, subsequent to defendant's illegal use of satellite programming, in connection with the prosecution or investigation of claims arising out of defendant's illegal conduct.

After asserting these various objections, Plaintiff then stated: "Subject to and without waiving the foregoing objections, see documents produced with plaintiff's disclosures."

■ The Court will overrule Plaintiff's assertion of work product immunity, attorney-client privilege, investigative and consulting expert privilege, and confidentiality. Plaintiff does not reassert any of these objections in its response to the Motions to Compel. The Court therefore deems these objections abandoned.[8]

Even if the Court were to consider the vague arguments that Plaintiff makes on page 5 of its response to the Motions to Compel as an attempt to reassert its objections, the Court would still overrule them as unsupported. In *Sonnino v. University of Kansas Hospital Authority*,[9] this Court summarized the burden on the party asserting an objection based on work product immunity or privilege. The Court first noted that "[i]t is well settled that when a party withholds documents or other information based on a privilege or work product immunity, the 'party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.'"[10] The Court summarized the burden as follows:

> [T]he party asserting the objection must "describe in detail" the documents or information sought to be protected. The objecting party must also provide sufficient information to enable the court to determine whether *each element* of the asserted objection is satisfied. A "blanket claim" as to the applicability of the privilege/work product doctrine does not satisfy the burden of proof. Moreover, the objecting party has the burden to establish the existence

---

**8.** This Court has held on numerous occasions that objections asserted in a party's initial response to discovery requests but not reasserted in response to a motion to compel are waived and deemed abandoned. *See, e.g., Dolquist v. Heartland Presbytery,* 221 F.R.D. 564, 568 n. 16 (D.Kan.2004) ("objections initially raised but not relied upon in response to a motion to compel are deemed abandoned"); *Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655, 662 (D.Kan.1999) (The court "generally deems objections initially raised but not relied upon in response to the motion [to compel] as abandoned").

**9.** 221 F.R.D. 661 (D.Kan.2004).

**10.** *Id.* at 668 (quoting Fed.R.Civ.P. 26(b)(5)).

of the privilege/immunity prior to the time that the Court is asked to determine its sufficiency and applicability.[11]

■ Applying these standards, the Court finds Plaintiff's assertion of attorney-client privilege and work product immunity to be unsupported. At no time has Plaintiff provided any type of privilege log or made an attempt to describe the nature of any of the alleged privileged or work product documents so as to enable Defendants (or the Court) to assess the applicability of the claimed privilege or protection. In short, Plaintiff has failed to make any showing that documents responsive to this request are protected by a privilege or the work product doctrine. The Court will therefore overrule these objections.

Also, to the extent that Plaintiff is attempting to assert an objection based on confidentiality, that objection will be overruled. This Court has held on many occasions that "a concern for protecting confidentiality does not equate to privilege."[12] Thus, information and documents are not shielded from discovery merely because they are confidential.[13]

■ Finally, to the extent Plaintiff has attempted to partially answer these requests by referring Defendants to "documents produced with Plaintiff's disclosures," the Court agrees with Defendants that such an answer is improper. Federal Rule of Civil Procedure 34(b) provides that a party producing documents "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Plaintiff's partial responses to these requests do not comply with Rule 34(b). There is no indication Plaintiff produced any of the requested documents as they are kept in the usual course of business. Absent such a production, Plaintiff was required to identify the particular documents or to organize and label them to correspond to these specific requests. There is nothing in the record indi-

cating that Plaintiff did so. Thus, Plaintiff's partial responses to these requests did not comply with Rule 34(b).

To summarize, the Court overrules all of Plaintiff's objections and the assertion of any privileges to these requests. Within *ten (10) days* of the date of filing of this Order Plaintiff shall (1) serve amended responses to these requests which comply with Rule 34(b), and (2) produce all documents responsive to them. Plaintiff shall not withhold any responsive documents on the basis of privilege or work product immunity or on any other basis.

## C. The Records Custodians

### 1. Interrogatory No. 12—Identity of Record Custodians

This interrogatory asks Plaintiff to "state the identity" of each "Custodian of Records." The interrogatories define "Custodian of Records" as "all persons who can authenticate any documents that show Defendant purchased an alleged piracy device." The interrogatories define the term "identity" as "the full name, residence and business addresses and residence and business phone numbers of the person or entity, not his attorney."

Plaintiff objected to this interrogatory on the grounds it is overly broad and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff then stated that it had obtained "the information pertinent to Defendant through a raid on the entity identified in plaintiff's complaint." Plaintiff indicated that further information regarding the entity could be found in Plaintiff's initial disclosures.

Some time after asserting these objections, Plaintiff's counsel sent a letter to defense counsel providing the name of the person who would authenticate the packing slips. Plaintiff's counsel indicated that this individual "has been operating through an attor-

---

**11.** *Id.* at 668–69 (citations omitted) (emphasis in original).

**12.** *Sonnino v. Univ. of Kan. Hosp. Auth.,* 220 F.R.D. 633, 642 (D.Kan.2004) (citations omitted).

**13.** *Id.*

ney," and he provided defense counsel with the attorney's name and address.

Defendants state that they seek this information in order to subpoena the records custodians for deposition. They indicate that their counsel has contacted the attorney identified in Plaintiff's counsel's letter and that he refuses to return calls and will not accept service of subpoena on behalf of his client.

 The Court will overrule Plaintiff's objections to this interrogatory. The Court finds that it seeks relevant information and is not overly broad. Defendants are entitled to know the residence and business addresses and phone numbers of this witness (assuming they are known by Plaintiff) and not just the address and phone number of the witness attorney. Although Plaintiff's answer to the interrogatory indicates that this information may be found in Plaintiff's initial disclosures, as the Court stated with respect to Interrogatory No. 1 (*see* Part II.B, *supra*), the party responding to an interrogatory may not merely refer the requesting party to its disclosures or other pleadings previously served. And even if such a response were proper, the Court notes that, contrary to Plaintiff's assertion, this information is *not* provided in Plaintiff's disclosures.[14]

In light of the foregoing, the Court will grant the Motions to Compel as to Interrogatory No. 12. Plaintiff shall serve an amended response to Interrogatory No. 12 within ***ten (10) days*** of the date of filing of this Order.

### 2. *Interrogatory No. 13 and Request No. 18*

Interrogatory No. 13 asks Plaintiff to "fully describe" the terms of any civil or criminal settlement that Plaintiff has reached with each "Custodian of Records." Request No. 18 asks Plaintiff to produce all documents that show the terms of any such civil or criminal settlements.

Plaintiff asserted the following objections to this interrogatory and request for production: (1) work product immunity, (2) investigative and consulting expert privilege, (3) invasion of Plaintiff's trial strategy and other thought processes of Plaintiff's counsel, (4) attorney-client privilege, (5) "seeks to obtain information contained in confidential communications relating to the claims made in the basis of this lawsuit which may have been made between or among DIRECTV and its agents, representatives, and employees, subsequent to defense of illegal use of satellite programming, and in connection of [sic] the prosecution and investigation of claims arising out of defendant's illegal conduct," (6) overly broad, (7) unduly burdensome, (8) not reasonably calculated to lead to the discovery of admissible evidence, (9) settlement communications privilege, and (10) "seeks information subject to constitutional privacy concerns and disclosure [that] ... would, in effect, impede and shield valid settlement pursuits in contravention of federal procedure rules and rules of evidence." The Court construes this tenth and final objection as one asserting that settlement negotiations and agreements should not be discoverable based on policy reasons, particularly the policy reasons behind Federal Rule of Evidence 408, which bars the admissibility of certain evidence regarding settlements when offered to prove liability for or invalidity of the claim or its amount.

In its response to the Motions to Compel, Plaintiff reasserts only a few of these objections, namely, relevancy, confidentiality, settlement communications privilege, and nondiscoverable based on the policy reasons supporting Rule 408. The Court will therefore address the merits of those four objections. The Court, however, will not address the other six objections because they were not reasserted in response to the Motions to Compel. As noted previously, objections initially raised in response to discovery requests that are not reasserted in response to a motion to compel are deemed abandoned.[15]

---

14. *See* Pl.'s Fed.R.Civ.P. 26 Disclosures (attached as Ex. 1 to doc. 174).

15. *See Dolquist v. Heartland Presbytery,* 221 F.R.D. 564, 568 n. 16 (D.Kan.2004) (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655, 662 (D.Kan.1999)).

#### a. Relevancy

The threshold question is whether the requested discovery, including the disclosure of any settlement agreements, is relevant to this lawsuit. Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery. It provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[16]

 Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[17] When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery does not come within the broad scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure.[18] Conversely, when relevancy is not apparent on the face of the interrogatory or request, the party seeking the discovery has the burden to show the relevancy of the information or documents sought.[19]

 The Court does not find that these discovery requests seek relevant information on their face. Thus, Defendants have the burden to show that they seek relevant information or that they are reasonably calculated to lead to the discovery of admissible evidence. Defendants explain that Plaintiff has filed lawsuits against the individuals who are most likely to be the "Custodians of Records" and that Defendants believe Plaintiff has re-solved those lawsuits by entering into settlements "that required [the records custodians] to cooperate with DIRECTV's campaign in exchange for leniency."[20] Defendants argue that the settlements and their terms are relevant because they may very well establish the bias or prejudice of the records custodians, who will be called to testify at trial to authenticate the packing slips.

Plaintiff counters that Defendants have "zero factual support" that Plaintiff has settled lawsuits against the records custodians by entering into settlement agreements requiring them to cooperate with Plaintiff in exchange for leniency. Plaintiff, however, does not deny that Plaintiff has entered into settlement agreements with the potential records custodians.

The Court agrees with Defendants that the settlement agreements and information regarding their terms are relevant because they may establish the bias or prejudice of the records custodians who will testify regarding the packing slips and their authenticity. As Defendants point out, Defendants deny purchasing the alleged Satellite Piracy Devices and they dispute the accuracy of the packing slips. Thus, the packing slips appear to be an important issue in this case. Similarly, a records custodian who will testify regarding the authenticity and accuracy of the packing slips appears to be a potentially important witness. The Court therefore finds that Defendants have established the possible relevance of this material, and the Court will overrule Plaintiff's relevancy objections to Interrogatory No. 3 and Request No. 18.

#### b. Confidentiality

 With respect to confidentiality, Plaintiff's arguments are rather vague. To the extent that Plaintiff is objecting to providing these materials on the basis of confidentiality, the Court overrules the objection As noted above, a general concern for protecting

---

16. Fed.R.Civ.P. 26(b)(1).

17. *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 643 (D.Kan.2003) (citation omitted).

18. *Id.* (citation omitted).

19. *Id.* (citation omitted).

20. Defs.' Mots. to Compel (doc. 158, 159) at p. 7.

confidentiality does not equate to privilege.[21] Thus information and documents are not shielded from discovery merely because they are confidential.[22] Moreover, this Court has held that in the context of settlement agreements the mere fact that the settling parties agree to maintain the confidentiality of their agreement does not serve to shield the agreement from discovery.[23] Simply put, litigants may not shield otherwise discoverable information from disclosure to others merely by agreeing to maintain its confidentiality.[24] The Court thus overrules any confidentiality objections that Plaintiff has to these discovery requests.

### c. Settlement communications privilege

■ The Court will next turn to Plaintiff's objections that the discovery is barred by a so-called settlement communications privilege. In support of its assertion of a settlement communications privilege Plaintiff cites *Goodyear Tire & Rubber Company v. Chiles Power Supply, Inc.*[25] The Court finds the *Goodyear* case—and the privilege discussed therein—inapplicable to the case at bar. The privilege discussed in *Goodyear* is a privilege protecting against the disclosure of "negotiation communications," i.e., "matters discussed by parties during settlement negotiations."[26] Here, Defendants are not seeking to discover the communications made during settlement negotiations, but rather the terms of the settlements and the agreements themselves. The Sixth Circuit in *Goodyear* noted that the settlement communications privilege extends only to discussions made during settlement negotiations and not to the terms of the settlement or the settlement agreement itself.[27] Thus, the Court rejects Plaintiff's argument that this

information is protected by a settlement negotiations privilege.

### d. Federal Rule of Evidence 408 and policy reasons barring discovery

■ Plaintiff's fourth and final objection is based on Federal Rule of Evidence 408 and the policy reasons supporting that rule. Rule 408 provides as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.[28]

Plaintiff first argues that evidence of the settlement agreements should not be discoverable because it is inadmissible under Federal Rule of Evidence 408. Plaintiff fails to recognize that Rule 408 is a rule regarding admissibility and not discoverability. Federal Rule of Civil Procedure 26(b)(1) provides that "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Moreover, Federal

---

21. *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 642 (D.Kan.2004) (citations omitted).

22. *Id.*

23. *Sonnino v. Univ. of Kan. Hosp. Auth.*, No. 02–2576–KHV–DJW, 2004 WL 769325, at *3 (D.Kan. Apr. 8, 2004).

24. *Id.*

25. 332 F.3d 976 (6th Cir.2003).

26. *Id.* at 980, 982.

27. *Id.* at 981 (noting that settlement negotiations privilege and Fed.R.Evid. 408 does not bar admission of the settlement agreement itself if offered for a purpose other than to show liability or invalidity of the claim or its amount).

28. Fed.R.Evid. 408.

Rule of Evidence 408 provides an exception that the evidence is not excluded when offered to show bias or prejudice of a witness. Thus, Rule 408 is not a per se bar to discovery of the settlement agreements or their terms.

Plaintiff appears to implicitly recognize this principle and argues that because a strong public policy favors settlement and the confidentiality of settlement agreements, Defendants should be required "to make a heightened and particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of the agreement."[29] Plaintiff contends that Defendants have failed to make such a showing.

Some courts have held that a party must meet a heightened standard to discover information contained in and related to settlement agreements in deference to Federal Rule of Evidence 408 and the public policy encourag-

ing settlements.[30] In cases decided by those courts, the heightened standard typically requires the party moving for discovery of settlement materials to make a "particularized showing" that the information is reasonably calculated to lead to the discovery of admissible evidence.[31] On the other hand, a number of courts have refused to apply such a heightened standard, and instead apply only the Rule 26 standard that the party opposing the discovery request show that it is not relevant to a claim or defense or not reasonably calculated to lead to the discovery of admissible evidence.[32] Other cases fall somewhere in between, ruling that the party seeking discovery of the settlement materials has the burden to show that the information is relevant or reasonably calculated to lead to the discovery of admissible evidence.[33]

This Court need not decide which of these standards to apply here,[34] because the Court

---

**29.** Pl.'s Resp. to Defs.' Mots. to Compel (doc. 174) at pp. 3–4.

**30.** See, e.g., Lesal Interiors, Inc. v. Resolution Trust Corp., 153 F.R.D. 552, 562 (D.N.J.1994); Bottaro v. Hatton Assocs., 96 F.R.D. 158, 160 (E.D.N.Y.1982);

**31.** See Lesal Interiors, 153 F.R.D. at 562 (in order to reconcile Fed.R.Evid. 408 with broad discovery rule, party seeking information regarding settlement must make "a greater, more 'particularized showing' that the evidence sought is relevant and calculated to lead to the discovery of admissible evidence"); Bottaro, 96 F.R.D. at 160 (party seeking discovery of settlement agreement must make a "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of [the] settlement agreement");

**32.** See, e.g., In re Initial Public Offering Sec. Litig., No. 21 MC 92(SAS), 2004 WL 60290, at *4–5 (S.D.N.Y. Jan.12, 2004) (rejecting standard requiring requesting party to make a "particularized showing" of relevance and instead applying Fed.R.Civ.P. 26 requirement that the settlement material need only be relevant to a claim or defense in the action); City of Wichita v. Aero Holdings, Inc., 192 F.R.D. 300, 302 & n. 1 (D.Kan.2000) (Belot, J.) (rejecting suggestion that "a higher burden is placed on the party seeking to discover evidence related to settlement negotiations" and holding that the court "must rely on the party opposing discovery [of settlement] to explain why the information sought will not lead to otherwise admissible evidence"); Bennett v. La Pere, 112 F.R.D. 136, 139 (D.R.I.1986) (specif-

ically rejecting "particularized showing" standard).

**33.** See, e.g., Vardon Golf Co. v. BBMG Golf Ltd., 156 F.R.D. 641, 650 (N.D.Ill.) (rejecting notion that Federal Rules of Civil Procedure require a party to make a "particularized showing" but requiring party seeking the settlement information to articulate "what kind of information it reasonably expects to find in the documents sought and how this will lead to other admissible evidence"); Fid. Fed. Sav. and Loan Ass'n v. Felicetti, 148 F.R.D. 532, 534 (E.D.Pa.1993) (holding that the only effect of the "particularized showing" requirement "is to switch the burden of proof from the party in opposition to the discovery to the party seeking the [settlement] information"); Morse/Diesel, Inc. v. Trinity Indus., Inc., 142 F.R.D. 80, 84 (S.D.N.Y.1992) ("particularized showing" requirement "simply places the burden of establishing relevance squarely on the party seeking production of the [settlement] documents withheld.");

**34.** Plaintiff cites Doe v. Methacton Sch. Dist., 164 F.R.D. 175 (E.D.Pa.1995) for the proposition that in certain circuits settlement agreements are discoverable only to show that the settlement may be collusive. See id. at 176 (citing Thornton v. Syracuse Sav. Bank, 961 F.2d 1042, 1046 (2d Cir.1992); Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago, 834 F.2d 677, 684 (7th Cir.1987)). Plaintiff contends that because no such collusion is alleged here, Defendants are not entitled to discover these settlement agreements. Plaintiff's reliance on Doe is misplaced. Doe, along with the Second and Seventh Circuit decisions relied upon therein, dealt

finds that under any of these standards Defendants have met their burden. Defendants seek these settlement-related documents and information primarily for their impeachment value, i.e., to establish the possible bias of the records custodians. In other words, the settlement agreements are relevant to show the records custodians' motivations for testifying. Even Federal Rule of Evidence 408 would permit the introduction at trial of the settlement terms and agreements for the purpose of proving the bias or prejudice of a witness. It follows that in the instant case—where there has been a plausible assertion that this evidence may show bias—that the standard for discovery has been met.[35]

While Plaintiff argues that allowing Defendants to discover this information would frustrate the policy encouraging confidential settlements, Plaintiff does not support this argument. The Court cannot conceive of any way in which allowing discovery of this information would serve to discourage settlement under the circumstances of this case. Defendants have alleged that the lawsuits involving these records custodians have been resolved through the settlements, and there is no evidence or argument from Plaintiff that the settlement negotiations are still ongoing. Thus, this is not a situation where the records custodians might be discouraged from settling by the fear that their settlements may come back to haunt them before a jury. Nor has it been demonstrated, or even argued, that any other party might be discouraged from settling because of the disclosure of these purported settlements. In other words, the Court does not see how the discovery of the terms of these purported settlements would have any chilling effect on any other settlements or how it would frustrate the policy of encouraging settlements.

In light of the above, the Court will grant the Motions to Compel with respect to Interrogatory No. 13 and Request for Production No. 18. Plaintiff shall serve its amended written responses and produce the requested documents within *ten (10) days* of the filing of this Order.

Although the Court is granting the Motions to Compel as to these settlement materials, the Court is mindful of the settling parties' concerns regarding confidentiality. The Court will therefore direct the parties to submit an agreed protective order prohibiting (1) the disclosure of this information and documents to non-parties, and (2) the use of such information/documents outside of this lawsuit.[36] Within *ten (10) days* of the date of filing of this Order, counsel for the parties shall confer and attempt to agree upon such a protective order. If the parties are unable to reach an agreement, the Court will allow Plaintiff *five (5) days* thereafter to move for a protective order. Defendants shall have *five (5) days* thereafter to file a response to the motion for protective order.

### 3. Interrogatory No. 14

This interrogatory asks Plaintiff to "[i]dentify each case by stating the court and case number in which the Custodian of Records has testified for [Plaintiff], in person or by declaration." Plaintiff objected to this interrogatory on the basis that it is overly broad

---

with a defendant's attempts to discover the settlement agreements of its co-defendants in the same, ongoing litigation. Clearly, different policy reasons apply in such cases. The Second Circuit in *Thornton* noted that such a rule "is necessary to prevent parties from learning their opponents' strategies." 961 F.2d at 1046 (citing *Mars*, 834 F.2d at 684). Such a rationale does not apply to the instant case, where the settling parties are not, and have never been, parties to this lawsuit.

**35.** *See Westside–Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, No. CIV–A 97–3012, 1998 WL 186705, at *3 (E.D.La.1998) (allowing discovery of settlement agreements in order to evaluate a witness' potential bias, interest and credibility); *Tribune Co. v. Purcigliotti*, No. 93 Civ.

7222(LAP)(THK), 1996 WL 337277, at *2–3 (S.D.N.Y. June 19, 1996) (allowing discovery of settlement-related materials where materials might reveal possible bias of settling witness); *Sec. Exch. Comm'n v. Thrasher*, No. 92 Civ. 6897(MHD), 1996 WL 94533, at *2 (S.D.N.Y. Feb.27, 1996) (allowing party to discover information disclosed in settlement discussions where party proposed to use information to impeach witness' credibility).

**36.** *See Stewart v. Mitchell Transport*, No. 01–2546–JWL, 2002 WL 1558210, at *6 (D.Kan. July 8, 2002) (overruling defendant's confidentiality objections but directing parties to confer and draft a protective order to prevent disclosure of requested documents to non-parties).

and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Plaintiff then stated: "Notwithstanding said objection[s], DIRECTV obtained the information pertinent to defendant through a raid on the entity identified in plaintiff's complaint. Further information regarding this entity can be found in plaintiff's initial disclosures."

Defendants generally address this interrogatory and argue that Plaintiff's overbreadth and relevance objections should be overruled. They also argue that Plaintiff's practice of referring Defendants to Plaintiff's disclosures instead of providing the requested information is not acceptable. Plaintiff does not respond to these arguments in its response to the Motions to Compel. In fact, Plaintiff does not even address Interrogatory No. 14 in its response to the Motions. The Court therefore finds that Plaintiff has abandoned its objections to this Interrogatory.[37] Accordingly, the Court will grant the Motions to Compel with respect to Interrogatory No. 14.

### D. Defendant's Alleged Visits to Websites Dealing with Satellite Piracy

#### 1. Interrogatory No. 16

This interrogatory asks Plaintiff to identify "the exact URL address of all websites [Plaintiff] allege[s] Defendant viewed in connection with his acquisition of any alleged piracy device." Plaintiff objected as follows:

> DIRECTV objects to this request [sic] as overly broad and not reasonably calculated to lead to the discovery of admissible evidence as it is not limited in time or scope. DIRECTV further objects to this request as unduly burdensome as it seeks information more readily available to defendant DIRECTV further objects to this request as discovery is ongoing. Subject to and without waiving the foregoing ..., defendant purchased the device from Vector Technologies, which operated the web site

www.globalcardprogrammers.com. Additionally, see documents produced at DIRECTV's initial disclosures.

Defendants indicate in their Motions to Compel that approximately one week after Plaintiff served these objections Plaintiff served a supplemental answer to Turner Interrogatory No. 16 and then two days later served a second supplemental answer to that Interrogatory. In those supplemental answers Plaintiff identified three websites that Turner allegedly visited. Defendants do not provide the Court with Plaintiff's supplemental responses. Thus, the supplemental responses to Turner Interrogatory No. 16 are not part of the record. Pursuant to D. Kan. Rule 37.1(a), however, any motion to compel directed at interrogatory responses must be accompanied by copies of the portions of the responses in dispute. Without Plaintiff's supplemental responses to Turner Interrogatory No. 16, the Court is unable to determine whether there are grounds to grant Turner's Motion to Compel as to this interrogatory. Turner's Motion to Compel will therefore be denied as to Turner Interrogatory No. 16.

▇▇ The Court will now rule on Strauss Motion to Compel as it applies to Interrogatory No. 16. No supplemental answers were filed in response to that interrogatory. The Court finds that the objections Plaintiff asserted to Strauss Interrogatory No. 16 have been abandoned and therefore waived, as Plaintiff did not reassert them in its Response to Strauss' Motion to Compel.[38] Even if the Court were to find that Plaintiff had reasserted them or that Plaintiff did not intend to abandon them, the Court would still overrule the objections. Plaintiff does not support its objections that the interrogatory is unduly burdensome and overly broad. Unless the request is overly broad or unduly burdensome on its face, Plaintiff, as the party resisting discovery, has the burden to support its objections.[39] The objecting party must show specifically how, despite the broad

---

37. See *Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 n. 16 (D.Kan.2004) (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D.Kan.1999)) (objections initially raised but not relied upon in response to motion to compel are deemed abandoned).

38. See id.

39. *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 672 (D.Kan.2003) (citations omitted).

and liberal construction afforded the federal discovery rules, the discovery request is overly broad or burdensome by submitting affidavits or offering evidence revealing the nature of the burden.[40] Plaintiff provides no such affidavits or evidence. Moreover, even if it is true, as Plaintiff asserts, that the requested information is more readily available to Defendants, that in itself does not render the interrogatory objectionable.

■ Plaintiff's objection that "discovery is ongoing" is not a valid objection. The Court is aware of no rule or case recognizing such a blanket objection. To the extent Plaintiff is concerned that its answer to this interrogatory might change during the course of discovery, then Plaintiff can, and in fact, may have a duty to, supplement its interrogatory answer.[41]

Finally, as noted above, Plaintiff is not allowed to refer Defendant Strauss to documents produced with Plaintiff's disclosures in lieu of providing a written response.

In light of the above, the Court will grant Strauss' Motion to Compel as to Interrogatory No. 16. Plaintiff shall serve its amended response to Strauss Interrogatory No. 16 within *ten (10) days* of the filing of this Order.

### 2. Request for Production No. 20

This request seeks all documents that show the contents of any websites Defendants viewed in connection with their alleged acquisition of the Satellite Piracy Devices. Plaintiff objected on the basis that the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also objected on grounds that the request seeks proprietary business and/or confidential trade secret information.

As in the case of Strauss Interrogatory No. 16, the Court finds that these objections have been abandoned as to both Turner and Strauss Request No. 20, as Plaintiff did not reassert the objections in responding to the Motions to Compel.[42] Even if the Court were to find that Plaintiff had reasserted them or that Plaintiff did not intend to abandon them, the Court would still overrule them. Plaintiff does not support its objections that the request is unduly burdensome and overly broad with any affidavits or evidence and provides no explanation as to why it contends it is burdensome or overbroad.[43] In addition, Plaintiff fails to explain why the request is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff has apparently alleged that Defendants visited various websites relating to satellite piracy in connection with their alleged acquisition of the Satellite Piracy Devices. Defendants are entitled to know which websites Plaintiff contends Defendants have visited, and Plaintiff should be required to produce any documents it may have in its possession, custody, or control which show the contents of those websites.

■ Finally, even if the Court were to find that Plaintiff had reasserted its objection that this requests seeks proprietary business and/or confidential trade secret information, the Court would overrule such an objection for several reasons. First, the Court does not understand how documents showing the contents of websites—sites that were open for alleged viewing by Defendants—would contain proprietary business or trade secret information of Plaintiff. Secondly, even if the requested documents somehow did contain such proprietary or trade secret information, that would not render the document privileged or otherwise undiscoverable. It is

40. *Id.*

41. *See* Fed.R.Civ.P. 26(e)(2) ("A party is under a duty seasonably to amend a prior response to an interrogatory ... if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.").

42. *See supra* note 37 and accompanying text.

43. As noted above with respect to Interrogatory No. 6, a party objecting on the basis of overbreadth or undue burden has the burden to support the objection with an affidavit or other evidence. *See Hammond,* 216 F.R.D. at 672 (objecting party must submit affidavits or other evidence demonstrating specifically how discovery is overly broad or burdensome).

well settled that no absolute privilege exists for trade secrets or proprietary business information.[44] Thus asserting an objection to a discovery request that the documents sought contain trade secrets or proprietary information does not shield the documents from discovery.[45]

██ When a party is served with a request for production that would require it to produce trade secret or proprietary information, the party may file a motion for protective order under Federal Rule of Civil Procedure 26(c)(7).[46] To resist discovery under Rule 26(c)(7), the party has the burden to establish that the information sought is in fact a trade secret and must then demonstrate that its disclosure would be harmful.[47] Plaintiff has not moved for a protective order nor has it established that these documents contains trade secrets or that their disclosure would injure Plaintiff or any other entity. Thus, even if Plaintiff had reasserted its trade secret/proprietary information objection, it would still be overruled.

Finally, the Court notes that in a supplemental pleading filed in conjunction with the Motions to Compel Plaintiff appears to contend that any documents it has which are responsive to this request are protected work product.[48] Plaintiff, however, did not assert a work product objection to this request when it served its initial responses. Plaintiff cannot assert work product protection for the first time in a supplemental response or sur-reply. It is well settled that a party may not assert work product immunity for the first time in its response to a motion to compel because a privilege not timely asserted in the initial response to a request for production is deemed waived.[49] As the Tenth Circuit has stated: "It is not enough that a document would have been privileged if an adequate and timely showing had been made. The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document." [50] Here, Plaintiff made no assertion of work product immunity in its initial response to the request and provided no log identifying the nature of the claimed work product. Thus, Plaintiff has waived any claim to work product immunity that it may have in response to Request No. 20.[51]

As the Court overrules all of Plaintiff's objections to Request No. 20, the Motions to Compel are granted as to this request. Within *ten (10) days* of the date of filing of this Order Plaintiff shall serve its amended written response to this request and produce all documents responsive to it.

### E. Device Testing

Interrogatory No. 8 asks Plaintiff to "[s]tate the date of any tests or examinations anyone has conducted of the exact piracy devices" allegedly possessed by Defendants. Interrogatory No. 9 asks Plaintiff to "fully describe" the results of any such tests, and Interrogatory No. 10 asks Plaintiff to identify each person with knowledge of the results of any such tests. Request for Production

---

**44.** *See Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) ("there is no absolute privilege for trade secrets and similar confidential information") (citations omitted); *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir.1981) (same).

**45.** *Airport Sys. Int'l, Inc. v. Airsys ATM, Inc.*, No. 00–2171–KHV, 2001 WL 1718274, at *10 (D.Kan. May 16, 2001).

**46.** Under Fed.R.Civ.P. 26(c)(7) a party may move for an order that trade secrets or other confidential research, development, or commercial information not be revealed or be revealed only in a designated manner.

**47.** *Centurion Indus.*, 665 F.2d at 325.

**48.** *See* Pl.'s Mem. in Opp. to Defs.' Mots. for Sanctions (doc. 219) and Pl.'s Sur–Reply (doc. 308).

**49.** *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 647 (D.Kan.2004) (citing *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984); *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D.Kan.1998)).

**50.** *West*, 748 F.2d at 542.

**51.** *See Sonnino*, 220 F.R.D. at 647 (holding that defendant waived any claim to work product immunity by failing to assert such immunity in response to the request for production; defendant's assertion of the immunity for the first time in response to the motion to compel was of no effect).

No. 14 seeks all documents relating to such tests.

Plaintiff objected to these interrogatories on the basis that they are overly broad and unduly burdensome and that they are not calculated to lead to the discovery of admissible evidence. Plaintiff also objected on the basis of work product immunity, "investigative and consulting expert privileges," and attorney-client privilege. In addition, Plaintiff objected on the basis that:

[Each request] necessarily seeks to obtain information contained in confidential communications relating to the claims made the basis of this lawsuit which may have been made between or among DIRECTV and its agents, representatives and employees, subsequent to defendant's illegal use of satellite programming, in connection with the prosecution and investigation of claims arising out of defendant's legal conduct.

Finally, Plaintiff objected to the interrogatories on the basis that they call for expert testimony and a narrative. After stating these objections Plaintiff stated: "Subject to and without waiving the foregoing objections and limitations, plaintiff refers defendant to its expert disclosures in this matter."

Plaintiff asserted the very same objections to Request for Production No 14, except for the objections that the request calls for expert testimony and a narrative.

In their Motions to Compel, Defendants do not directly address these objections except to assert that it is improper for Plaintiff to refer Defendants to its expert disclosures. Plaintiff also fails to address its objections in its response to the Motions to Compel. In other words, neither side has addressed the objections initially asserted by Plaintiff. The Court must thus decide whether to grant the Motions to Compel based on Plaintiff's failure to reassert the objections, or deny the Motions to Compel based on Defendants' failure to raise them in the Motions. This Court addressed a similar situation in *Sonnino v. University of Kansas Hospital Authority*.[52] There, the Court recognized that the moving

party must address each and every objection asserted by the responding party—including boilerplate objections such as the type asserted here. The Court stated:

[T]he party filing the motion to compel has the initial burden of addressing each boilerplate objection in its motion to compel. By doing so, that brings the objection "into play" and places the burden on the objecting party to support its objections. If the moving party fails to address an objection in its motion to compel, the objecting party need not raise it, and the objection will stand.[53]

Here, Defendants did not address the various objections asserted by Plaintiff in its responses to the interrogatories and request for production. As Defendants failed to address the objections in their Motions to Compel, Plaintiff was under no obligation to reassert them or discuss them in its response to the Motions. Plaintiff's objections to these discovery requests therefore stand, and the Motions to Compel will be denied as to theses requests.

### F. Communications Between Plaintiff and Defendants

#### 1. *Interrogatory No. 19*

This interrogatory asks Plaintiff to fully describe all oral or written communications between Plaintiff and each Defendant, and to provide the date and contents of any such communications. In response, Plaintiff asserted no objections and referred Defendants "to documents produced herewith."

Defendants assert in their Motions to Compel that it is improper for Plaintiff to refer Defendants to a group of documents that have been previously produced. Plaintiff counters that it has produced all *nonprivileged* documents evidencing communications with Defendants.

By indicating that it had produced all *nonprivileged* documents, Plaintiff implies that it has withheld *privileged* documents. Plaintiff, however, never asserted any privilege to this interrogatory. Thus, to the extent that

---

**52.** 221 F.R.D. 661 (D.Kan.2004).

**53.** *Id.* at 671 n. 37.

Plaintiff is attempting for the first time in its response to the Motions to Compel to assert a privilege, the Court finds that such privilege has been waived.[54]

The Court agrees with Defendants that it was improper for Plaintiff to generically refer Defendants to a group of documents previously produced, for the reasons set forth in Part II.B, *supra*. The Court will therefore grant the Motions to Compel as to this interrogatory, and Plaintiff shall either provide a complete, written amended answer to this interrogatory, or identify the particular documents that it asserts it has already produced from which this information may be obtained. If Plaintiff chooses this latter course of action, it should make sure that the documents it produces provide sufficient information to answer all portions of this interrogatory.

### 2. Requests for Production No. 24, 25, and 26

Request No. 24 seeks all documents relating to any oral or written communications between Plaintiff and each Defendant. Request No. 25 seeks all documents relating to any oral or written communications between each Defendant and the seller of the alleged Satellite Piracy Device. Request No. 26 seeks all documents relating to any oral or written communications between each Defendant and any other person regarding the alleged Satellite Piracy Devices.

Plaintiff objected on the basis of work product immunity, "investigative and consulting expert privileges," attorney-client privilege, and confidentiality. Plaintiff then stated: "Subject to and without waiving the foregoing objections, see documents produced with plaintiff's disclosures and documents produced herewith."

In their Motions to Compel, Defendants assert that the communications are relevant, are not work-product, and have nothing to do with settlement communications. Defendants also assert that Plaintiff may not refer defendants to previously produced documents. Defendants fail to address Plaintiff's other asserted objections, i.e., those based on the investigative and consulting expert privileges, attorney-client privilege, and confidentiality.

As discussed above in Part II.E above, Defendants, as the moving parties, have the burden to address each and every objection in their Motions to Compel. Defendants, however, did not satisfy that burden, and the objections that they failed to discuss must stand. Accordingly, the Court will deny the Motions to Compel as to these requests.

## III. Defendants' Requests for Rule 37(a)(4), Rule 37(b)(2), and Rule 26(g) Sanctions

In their Motions to Compel, Defendants each request that they be awarded the attorney fees and expenses they have incurred in connection with the filing of their motions, as provided for in Federal Rule of Civil Procedure 37(a)(4). In their motions they also request that Plaintiff be precluded from presenting certain evidence as a result of its failure to provide the requested discovery, as provided for in Rule 37(b)(2). Finally, in their replies to the Motions to Compel, they ask that they be awarded sanctions pursuant to Federal Rule of Civil Procedure 26(g).

### A. Rule 37(a)(4) Sanctions

Defendants seek their reasonable expenses, including attorney fees, incurred in preparing the Motions to Compel. Federal Rule of Civil Procedure 37(a)(4)(C) allows a court to impose sanctions where, as here, a motion to compel is granted in part and denied in part. Under that rule, the court may "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner."[55]

▮ In this case, the Court has overruled many of Plaintiff's objections, a significant number of which the Court finds were not substantially justified. The Court thus deems it just to allow Defendants to recover a portion, if not all, of the reasonable ex-

---

54. *See* discussion immediately above in Part II. E.1.

55. Fed.R.Civ.P. 37(a)(4)(C).

penses and attorney fees that they have incurred in bringing their Motions to Compel.[56]

To aid the Court is determining the proper amount of expenses, Defendants' counsel shall file, within *twenty (20) days* of the date of filing of this Order, a pleading in which Defendants set forth the amount of expenses and attorney fees that Defendants seek to recover against Plaintiff and an affidavit itemizing the expenses and fees that Defendants incurred in bringing these Motions to Compel. Plaintiff shall have *twenty (20) days* thereafter to respond. The Court will then issue a second order, apportioning the expenses and fees and specifying the amount and time of payment.

### B. Rule 37(b)(2) Sanctions

Defendants also seek sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2). Defendants fails to recognize that Rule 37(b)(2) provides for the imposition of sanctions only where a party "fails to obey *an order* to provide or permit discovery."[57] No such order has been entered here. Thus, sanctions are not appropriate under this rule. Defendants' requests for Rule 37(b)(2) sanctions are therefore denied.

### C. Rule 26(g) Sanctions

Finally, Defendants seek sanctions pursuant to Federal Rule of Civil Procedure 26(g)(2). That rule sets forth an attorney's duty as it applies to responses and objections to discovery requests. It provides in pertinent part:

Every discovery request, response; or objection made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable

inquiry, the request, response, or objection is:

(A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; [and]

(B) not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation[.][58]

Given the importance of this duty, Rule 26(g)(3) permits a court, upon motion or upon its own initiative, to impose "appropriate sanctions" upon the attorney making the certification and/or the party on whose behalf the objections were made.[59] The Rule expressly provides that those sanctions may include the payment of the reasonable expenses and attorney fees incurred because of the violation.[60]

Defendants contend that sanctions are warranted under this rule because Plaintiff made frivolous objections to Defendants' Interrogatory Nos. 11 and 15–18 and Request No. 20. Defendant Turner also complains that Plaintiff supplemented its answer to Turner Interrogatory No. 16 without providing any explanation as to why it did not provide that information in its initial response. Turner contends that Plaintiff intentionally withheld this information when it initially responded to the interrogatory and did not supplement the interrogatory until after Plaintiff had deposed Turner, in an attempt to "sandbag" him.

In addition, Defendant Strauss complains that Plaintiff improperly objected to Strauss Request No. 29 and produced no documents responsive to it, but then later produced a photograph that was responsive to the request, with no explanation for the belated production.

Plaintiff counters that it made valid objections to these discovery requests. It also

---

**56.** In the absence of any evidence indicating that Plaintiff itself was responsible for the sanctionable conduct, the Court will impose the sanctions against the law firm of Plaintiff's counsel. *See Sonnino v. Univ. Kan. Hosp. Auth.,* 220 F.R.D. 633, 656 n. 91 (D.Kan.2004); *McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 697 (D.Kan.2000).

**57.** Fed.R.Civ.P. 37(b)(2) (emphasis added).

**58.** Fed.R.Civ.P. 26(g)(2).

**59.** Fed.R.Civ.P. 26(g)(3).

**60.** *Id.*

asserts that it was within its rights to voluntarily decide to waive its objections and to supplement its answers to Turner Interrogatory No. 16 and Strauss Request No. 29.

As a threshold matter, the Court notes that Defendants have not moved to compel answers to Defendants Interrogatory Nos. 11 and 15–18 and Strauss Request No. 19. Thus, the merits of the objections to those discovery requests have not been addressed by the parties. Furthermore, neither the discovery requests nor Plaintiff's objections/responses have been provided to the Court. The Court is therefore unable to determine whether Plaintiff's objections to these interrogatories are frivolous as Defendants assert.

Only Turner Interrogatory No. 16 remains at issue with respect to Defendants' request for Rule 26(g) sanctions. As noted above in Part II.D, however, Turner failed to provide the Court with Plaintiff's supplemental answers to Turner Interrogatory No. 16. The Court has thus declined to rule on Turner's Motion to Compel as it applies to this interrogatory. For the same reason, the Court must also decline to rule on the request for Rule 26(g) sanctions as it applies to this interrogatory.

Even if the Court were to hold otherwise and rule that Plaintiff had engaged in conduct subject to sanctions under Rule 26(g), the Court would find it unnecessary to award sanctions under Rule 26. The Court is already imposing sanctions against Plaintiff and in favor of both Defendants under Rule 37(a)(4). Thus, any award of sanctions under Rule 26(g) would be duplicative and unnecessary. Accordingly, the Court will deny Defendants' requests for Rule 26(g) sanctions.

**IT IS THEREFORE ORDERED** that Defendant Bill Strauss and William Turner's Motions to Compel (doc. 158 and 159) are granted in part and denied in part as set forth herein.

**IT IS FURTHER ORDERED** that within **ten (10) days** of the date of this Order, Plaintiff shall serve amended responses to the interrogatories and requests for production that Plaintiff is compelled to answer and shall produce all documents required to be produced. The production of documents shall take place at the offices of Defendants' counsel or at any other location agreed upon by the parties.

**IT IS FURTHER ORDERED** that within **ten (10) days** of the date of this Order, counsel for the parties shall confer and attempt to agree upon a protective order consistent with this Order. If the parties are unable to reach an agreement. Plaintiff shall have **five (5) days** thereafter to move for a protective order. Defendants shall have **five (5) days** thereafter to file a response to the motion for protective order.

**IT IS FURTHER ORDERED** that Defendants' requests for Rule 37(a)(4) sanctions are granted as set forth herein, and the parties shall follow the briefing schedule set forth herein regarding the amount of sanctions to be awarded.

**IT IS FURTHER ORDERED** that Defendants' requests for Rule 37(b)(2) sanctions are denied.

**IT IS FURTHER ORDERED** that Defendants' requests for Rule 26(g) sanctions are denied..

**IT IS SO ORDERED.**